# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAUL R. HYMES and ILANA HARWAYNE-GIDANSKY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. Violation of New York General Business Law § 349;**<br><br>**2. Violation of the New York General Obligations Law § 5-601;**<br><br>**3. Breach of Contract; and**<br><br>**4. Unjust Enrichment**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Saul R. Hymes and Ilana Harwayne-Gidansky ("Plaintiffs"), individually and on behalf of all other similarly situated persons (the "Class"), bring this action, based upon personal knowledge as to themselves and on information and belief as to all other matters, against Bank of America, N.A., and DOES 1 through 10, inclusive (collectively, "Defendant") and allege as follows:

## NATURE OF THE ACTION

1.      This is a class action based on Defendant's violation of New York General Obligation Law § 5-601 ("NY Gen. Oblig. Law § 5-601"), which requires a mortgage lender making a loan secured by a one-to-six family residence located in New York to pay the borrower a minimum of 2% simple interest for money received in advance from the borrower for tax and insurance that is held by the lender in an "escrow" account until payment is due.  As alleged herein, during all or part of the Class Period (defined below), Plaintiffs have paid hundreds of dollars into an escrow account but have received no interest on those payments.

2.      Plaintiffs and the Class (defined below) bring this action for restitution and reimbursement, as well as injunctive relief, pursuant to NY Gen. Oblig. Law § 5-601; New York General Business Law § 349 ("GBL § 349"); breach of contract; and unjust enrichment.

## JURISDICTION AND VENUE

3.      Venue in this District is proper pursuant to 18 U.S.C. § 1391(b)-(c) because the Defendant conducts business in this District and is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  Defendant's contacts with this District are also sufficient to subject it to personal jurisdiction.

4.      The aggregate amount in controversy exceeds $5 million (exclusive of interest and costs), and at least one class member (as well as the Plaintiffs themselves) belongs to a different state than that of Defendant; hence there is at least minimal diversity between the

parties. In addition, there are well over 100 plaintiffs in the expected Class. Therefore, jurisdiction is present under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 (CAFA).

## PARTIES

5. Plaintiffs are, and at all times relevant hereto were, residents and citizens of the city of East Setauket, New York.

6. Defendant Bank of America, N.A. is one of the largest national banks and one of the largest mortgage lenders in the country. Defendant is incorporated in the state of Delaware and has its principal place of business in and is a citizen of North Carolina. Through its numerous branches throughout New York and the United States, Defendant enters into mortgage agreements with customers for the financing of their homes.

7. The true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sues such defendants by such fictitious names. Each of the defendants designated herein as DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend the Complaint to reflect the true name and capacities of the defendants designated herein as DOEs when such identities become known.

## SUBSTANTIVE ALLEGATIONS

8. Defendant, like many mortgage lenders, maintains escrow accounts for its customers, which it sometimes requires as a condition of the loans it extends to customers. With such accounts, Defendant collects from the borrowing party the projected amount that the borrower will owe for tax and insurance on the mortgaged property, as well as additional "cushion" amounts to the extent allowed under the Real Estate Settlement and Procedures Act ("RESPA"). When due, Defendant directly pays the taxes and insurance on the borrower's

mortgaged property from the escrow account. Meanwhile, Defendant controls the escrow account and has full use of all money deposited into it.

9. Because the funds paid into an escrow account remain *the borrower's money*, New York law requires all "mortgage investing institutions" to pay at least 2% interest on such funds[1], pursuant to NY Gen. Oblig. Law § 5-601, which states as follows:

> § 5-601. Interest on deposits in escrow with mortgage investing institutions:
>
> Any mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage on any one to six family residence occupied by the owner or on any property owned by a cooperative apartment corporation, as defined in subdivision twelve of section three hundred sixty of the tax law, (as such subdivision was in effect on December thirtieth, nineteen hundred sixty), and located in this state shall, for each quarterly period in which such escrow account is established, credit the same with dividends or interest at a rate of not less than two per centum per year based on the average of the sums so paid for the average length of time on deposit or a rate prescribed by the superintendent of financial services pursuant to section fourteen-b of the banking law and pursuant to the terms and conditions set forth in that section whichever is higher.

10. Numerous other states in which Bank of America is registered to do business have similar laws requiring that interest be paid on escrow accounts, including those included in the definition of "Multi-State Class" below.

11. § 14-b(5) of the New York State Banking Law defines a "mortgage investing institution" as "any bank, trust company, national bank, savings bank, savings and loan association, federal savings and loan association, private banker, credit union, investment

---

[1] On January 19, 2018, the Superintendent of the Department of Financial Services issued an Order under Section 12-a of the New York State Banking Law with respect to the interest required to be paid on escrow accounts established in connection with loans secured by 1-6 family owner-occupied residences or any property owned by a cooperative apartment cooperation. Under the new rule, the rate must be at least equal to the lesser of 2.00% or (ii) the 6-month yield on U.S. Treasury securities on the last business day of the preceding calendar quarter.

3

company, insurance company, pension fund, mortgage company or other entity which makes, extends or holds a mortgage on any one to six family residence occupied by the owner or any property owned by a cooperative apartment corporation . . . and located in this state."

12. § 14-b(6) of the New York State Banking Law defines an "escrow account" as "any account established pursuant to an agreement between a mortgagor and a mortgage investing institution whereby the mortgagor pays to the mortgage investing institution or his designee amounts to be used for the payment of insurance premiums, water, rents or any similar charges, and shall also include real property tax escrow accounts. . . .".

13. In or about May 2016, Plaintiffs purchased a single family residence in East Setauket, New York. In connection with that purchase, Plaintiffs entered into a loan agreement with Defendant, secured by a mortgage on the residence (the "Mortgage Agreement"). Since the time that Plaintiffs entered into the Mortgage Agreement, Plaintiffs have been required to make monthly payments to Defendant for the pre-payment of property taxes and insurance on the property, in addition to the regular monthly payments of principal and interest on the loan.

14. During all times in which Plaintiffs have paid funds into the escrow account held by Defendant, Defendant has not paid Plaintiffs the interest mandated by NY Gen. Oblig. Law § 5-601. Defendant has thereby violated New York law, while enriching itself on the free use of the funds paid into the escrow account by Plaintiffs.[2]

## NO FEDERAL PREEMPTION DEFENSE

15. Prior to July 21, 2010, Defendant may have been relying (whether correctly or not) on the supposed preemption of New York law by the National Banking Act of 1864

---

[2] Defendant's uniform policy of denying interest on escrow impound accounts is at odds with other mortgage lenders such as Wells Fargo Bank, N.A., the largest mortgage originator in the United States, which complies with New York law and pays interest on escrow accounts.

4

("NBA") or other federal law. However, the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. No. 111-203, H.R. 4173) (the "Dodd-Frank Act"), enacted on July 21, 2010, clarified the relevant NBA preemption standard, as follows:

State consumer financial laws[3] are preempted, only if

> (A) application of a State consumer financial law would have a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State;
>
> (B) in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank of Mario County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996), the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers; and any preemption determination under this subparagraph may be made by a court, or by regulation or order of the Comptroller of the Currency on a case-by-case basis, in accordance with the applicable law; or
>
> (C) the State consumer financial law is preempted by a provision of Federal law other than [the National Bank Act].

12 U.S.C. § 25(b)(1).

16. The specific question of whether a state law requiring payment of interest on escrow accounts is preempted by the NBA was resolved by the Dodd-Frank Act itself, in which Congress expressly mandated that "[i]f prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." 15 U.S.C. § 1639d(g)(3) (amending the Truth in Lending Act). This provision made explicit that Congress's intent was to permit states to enact and enforce laws that require mortgage lenders to pay interest on escrow accounts, and that a state law requiring payment of interest on an escrow account does not "prevent or significantly interfere with" a national bank's

---

[3] "State consumer financial law" means a state law that does not discriminate against national banks and that "directly and specifically" regulates financial transactions between a national bank and consumer. 12 U.S.C. § 25(a)(2).

5

powers.

17. The latest that U.S.C. § 1639d(g)(3) could have taken effect is January 21, 2013. *See* Pub. L. 110-203, § 1400(c)(3) (Title XIV of Dodd-Frank takes effect 18 months after transfer date unless regulations were previously issued); Bureau of Consumer Financial Protection Designated Transfer Date, 75 Fed. Reg. 57, 252 (Sept. 20, 2010) (indicating a "transfer date" of July 21, 2011). However, as of July 21, 2010, when Dodd-Frank was enacted, it was established that state law on payment of escrow interest did not "prevent or significantly interfere with the exercise by the national bank of its powers."

18. 15 U.S.C. § 1639d(g)(3) is consistent with the regulations of the United States Department of Housing and Urban Development ("HUD"), which state that "[w]here escrow funds are invested, the net income derived from this investment must be passed on to the mortgagor in the form of interest . . . *in compliance with any state and/or regulatory agency requirements* governing the handling and/or payment of interest earned on a mortgagor's escrow account." HUD Handbook 4330.1, Rev-5, §§2-5 (emphasis added).

19. The conclusion that Defendant could not have reasonably relied on federal preemption of NY Gen. Oblig. Law § 5-601 after the enactment of the Dodd-Frank Act was recently underscored by the Ninth Circuit in its decision in *Lusnak v. Bank of America, N.A.*, 833 F.3d 1185 (9th Cir. 2018).

**CLASS ACTION ALLEGATIONS**

20. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class (hereinafter, the "New York Class"):

> All customers of Defendant (or its subsidiaries) who, during the four years prior to the filing of this action (i) entered into a loan with Defendant that was secured by a one-to-six family residence located in New York or property owned by a cooperative apartment corporation located in New York; (ii) paid monies into an escrow account, held by Defendant, to cover

6

>the projected amount owed in taxes, insurance and other matters relating to the property or cooperative apartment corp. securing the loan; and (iii) received from Defendant less than the amount of interest required under NY Gen. Oblig. Law § 5-601.

21.   With respect to certain of the claims specified below, Plaintiffs bring this action on behalf of themselves and the following class (hereinafter, the "Multi-State Class"):

>All customers of Defendant (or its subsidiaries) in the states of Connecticut, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New York, Oregon, Rhode Island and Utah, who, during the four years prior to the filing of this action (i) entered into a loan with Defendant that was secured by a residence or cooperative apartment corporation; (ii) paid monies into an escrow account, held by Defendant, to cover the projected amount owed in taxes, insurance and other matters relating to the property securing the loan; and (iii) received from Defendant less than the amount of interest owed under the law of the state in which the property was located.

Excluded from the New York Class and the Multi-State Class are Defendant's officers and directors and the immediate families of Defendant's officers and directors. Also excluded are the Defendant and its subsidiaries, parents, affiliates, joint venturers, and any entity in which Defendant has or had a controlling interest.

22.   For purposes of the complaint, the term "Class" refers collectively to the New York Class and/or the Multi-State Class, the phrase "Class Members" refers to all members of the New York Class and/or Multi-State Class, and the term "Class Periods" refers to the New York and/or Multi-State Class Periods.

23.   Plaintiffs reserve the right under Rule 23 to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitation to particular issues, based on the results of discovery.

24.   This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of Fed. R. Civ. P. 23 because there is a well-defined community of interest in the litigation and there is an administratively feasible way to identify

7

Class Members.

25.     **Numerosity of the Class.  Rule 23(a)(1).** The members of the Class are so numerous that their individual joinder is impracticable.  The number of mortgages held by Defendant number in the thousands or more throughout California, which is a reflection of the number of putative Class Members in this action.  Inasmuch as the Class Members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of Class Members can be ascertained.  Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

26.     **Existence and Predominance of Common Question of Law and Fact.  Rule 23(a)(2).** There are questions of law and fact common to the class.  These questions predominate over any questions affecting only individual Class Members.  These common legal and factual issues include, but are not limited to:

   a.   Whether Defendant has systematically engaged in a conduct that is a *per se* violation of state and federal law with respect to the payment to its customers of the interest accrued on escrow accounts;

   b.   Whether Defendant's conduct breached the mortgage agreements with its customers;

   c.   Whether Defendant has been unjustly enriched by its illegal conduct;

   d.   Whether Defendant must provide damages, restitution and/or reimbursement to borrowers in the amount of unpaid interest on funds held in escrow impound accounts based on the causes of action asserted herein; and

8

   e.  Whether injunctive relief is appropriate to prohibit Defendant from engaging in this conduct in the future.

27. **Typicality. Rule 23(a)(3).** The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

28. **Adequacy. Rule 23(a)(4).** The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class Members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class Members.

29. **Injunctive and Declaratory Relief. Rule 23(b)(2).** Defendant's actions regarding its customers' escrow impound accounts are uniform as to members of the Class. Defendant has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief as requested herein is appropriate with respect to the Class as a whole.

30. **Predominance and Superiority of Class Action. Rule 23(b)(3).** This suit may be maintained as a class action because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of

individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

31. The representative Plaintiffs contemplate the eventual issuance of notice to the proposed Class Members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the representative Plaintiffs would contemplate the use of additional media and/or mailings.

32. In addition to meeting the prerequisites of a Class Action, this action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

        i. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

      ii.      Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

  b.    The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

  c.    Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

      i.      The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

      ii.      The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

      iii.      The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

      iv.      The difficulties likely to be encountered in the management of a Class Action.

### FIRST CAUSE OF ACTION

**Violation of New York General Business Law § 349**
**(On Behalf of Plaintiffs and the New York Class)**

33.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged

herein.

34. Defendant committed and continues to commit deceptive and unlawful business acts and practices by failing to pay interest to Plaintiffs.

35. The foregoing deceptive acts and practices were directed at consumers.

36. The foregoing deceptive acts and practices were and continue to be misleading in a material way because they misrepresent the characteristics and benefits of maintaining an escrow account with Defendant. Plaintiffs reasonably believed that their escrow account was being maintained in accordance with all applicable laws, when in fact it was not.

37. As a result of Defendant's acts and practices, Plaintiffs and members of the New York Class have suffered an ascertainable loss equal to the loss of interest they should have received under New York law on money held in their escrow accounts.

38. On behalf of themselves and other members of the New York Class, Plaintiffs seek (1) to enjoin Defendant's unlawful acts and practices described herein; (2) to recover the greater of actual damages or $50 dollars, or three times actual damages up to $1,000 if it is determined that Defendant willfully or knowingly violated applicable law; and (3) reasonable attorneys' fees.

### SECOND CAUSE OF ACTION

**Violation of New York General Obligation Law § 5-601**
**(On Behalf of Plaintiffs and the New York Class)**

39. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

40. By the acts and practices herein, Defendants violated NY Gen. Oblig. Law § 5-601.

41. As a result of Defendant's violation of this statute, Plaintiffs and members of the New York Class have suffered economic injury equal to the interest they were entitled to receive in connection with their escrow accounts.

### THIRD CAUSE OF ACTION

**Breach of Contract**
**(On Behalf of Plaintiffs and the Multi-State Class)**

42. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

43. Plaintiffs and Defendant entered into the Mortgage Agreement, wherein Plaintiffs were required to deposit funds into an escrow account and Defendant was expressly required to comply with all applicable state and federal laws in connection with the Mortgage Agreement. The relevant terms of the Mortgage Agreement, drafted by Defendant, are as follows:

> **3(b) Lender's Obligations.**
>
> Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank . . . Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) *Applicable Law requires Lender to pay interest on the Escrow Funds.* (Emphasis added.)
>
> \*   \*   \*
>
> **16. Law That Governs this Security Instrument: Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

44. In reliance on Defendant's express agreement to comply with all applicable federal and state laws, Plaintiffs continuously made payments into their escrow account, as was required by the Mortgage Agreement.

45. Plaintiffs never received from Defendant -- through direct payment, credit to

13

future payments or otherwise -- any interest accrued on the funds maintained in the escrow account on their behalf, in direct violation N.Y. Gen. Oblig. Law § 5-601. Class Members in the states identified in the definition of the Multi-State Class above also did not receive interest on their escrow accounts, in violation of uniform agreements Defendant had with members of the Multi-State Class.

46. Because Defendant did not pay interest to Plaintiffs on funds paid into their escrow account, Defendant violated applicable state law and therefore was and is in breach of the Mortgage Agreement. In the same way, Defendant violated its mortgage agreements with other Class Members residing in the states identified in the definition of the Multi-State Class.

47. Plaintiffs and the Class Members were damaged by Defendant's breach of contract.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiffs and the Multi-State Class)

48. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

49. Plaintiffs and the other members of the Multi-State Class conferred a benefit on Defendant by paying money into escrow accounts, making that money fully useable by Defendant before payments from the escrow accounts on the mortgaged property were due.

50. As a result of Defendant's failure to comply with the laws of states that require payment of interest on escrow accounts, as identified in the definition of the Multi-State Class, Defendant was enriched at the expense of Plaintiffs and the Multi-State Class.

51. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and members of

the Multi-State Class.

52. Because Defendant's retention of the benefits conferred on it by Plaintiffs and other members of the Multi-State Class would be unjust and inequitable, Plaintiffs seek restitution from Defendant and an order from the Court requiring Defendant to disgorge all profits, benefits, and other compensation obtained due to its wrongful conduct.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs ask the Court to enter a judgment:

1. Approving of the Class, certifying Plaintiffs as representatives of the Class, and designating their counsel as counsel for the Class;

2. Declaring that Defendant has committed the violations alleged herein;

3. Granting damages, restitution, or disgorgement to Plaintiffs and the Class;

4. Granting declaratory and injunctive relief to enjoin Defendant from engaging in the unlawful practices described in this Complaint;

5. Granting compensatory damages, the amount of which is to be determined at trial;

6. Granting punitive damages;

7. Granting pre- and post-judgment interest;

8. Granting attorneys' fees and costs; and

9. Granting further relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury herein.

DATED: April 20, 2018                    **WOLF HALDENSTEIN ADLER**
                                         **FREEMAN & HERZ LLP**

By: *s/ Janine L. Pollack*
JANINE L. POLLACK
pollack@whafh.com
MICHAEL JAFFE
jaffe@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/686-0114

*Attorneys for Plaintiffs*

798942